Moncure, J.
Johnson and Jarrett contracted jointly for the purchase of the land in controversy. It was conveyed to them jointly, and they executed their joint and several bonds for the purchase money. They are, therefore, entitled to the land in equal proportions, unless it can be shown, that their relative rights have been changed by some valid agreement or other transaction between them. It is contended, in behalf of the appellee Johnson, that they have been so changed. And
First. It is contended that the agreement of the 26th of September 1849 is still in force, and that the land should be divided accordingly. That agreement depended entirely upon the contract between McDowell and Johnson of the 8th of September 1849. By the express terms of that contract it was not to be absolute and conclusive upon either of the contract *334 ing parties before the first of October 1849; up to which time either had the right to withdraw from it, by giving the other a written notice to that effect. McDowell did withdraw from it, and the contract was then at an end. It is true there was a stipulation in it, that if McDowell should withdraw because of some higher price being offered to him for the land, he should in that case offer the refusal of it to Johnson before he should have the right to sell it to any other person. But it is not pretended that he withdrew from the contract for that cause. The said agreement, being dependent on the said contract, ceased to have any effect when the latter ceased to have effect; which was on or before the first of October 1849. After that day, McDowell was at liberty to sell the land without being affected by the contract; and Johnson and Jarrett were at liberty to purchase it, jointly or severally, without being affected by the agreement. Accordingly, on the 15th of October 1849, McDowell empowered Taylor to contract with Jarrett or any other person for the sale of the land. On the 19th of the same month Taylor, Johnson and Jarrett met upon the land; and Taylor endeavored to effect a sale, first to one and then to the other. After several propositions had been made, each declined to purchase. They then held a private conference and concluded to purchase jointly at the price of nine thousand five hundred dollars, being five hundred dollars more than the price which had been stipulated for in the said conditional contract between Johnson and McDowell, and on the next day the joint contract was executed. If Johnson or .Jarrett had severally purchased the land, the one so purchasing would have been entitled to the whole in exclusion of the other. Having purchased it jointly, they are entitled to it equally; notwithstanding the agreement of the 26th of September 1849. But
•Secondly. It is contended that even if that agree *335 ment, propio vigore, be not still in force, yet Jobnson and Jarrett made the joint purchase with an express or tacit understanding that the land should be divided in the manner and on the terms prescribed by the said agreement; and that this understanding, though by parol, is binding on the parties.
If there had been such an understanding, I think it would have been void by the statute of frauds and perjuries. Henderson v. Hudson, 1 Munf. 510; Parker’s heirs v. Bodley, 4 Bibb’s R. 102; Davis v. Symonds, 1 Cox’s Cas. 402. There is a well settled distinction, in regard to the admission of .parol evidence, between seeking, and resisting, the specific performance of an agreement. A suit for specific performance is addressed to the sound discretion of the court, upon all the circumstances. And any evidence which shows that it would be inequitable to enforce the agreement as stated in the bill, is admissible as matter of defence. As was well said in the case of Osborn v. Phelps, 19 Conn. R. 63, 73, “ It was not the object of the statute to give any greater efficacy to written contracts for the sale of lauds than they possessed at the common law ; but merely to require such contracts to be made in writing, in order to lay the foundation of a suit at law or in equity.” Or, as Lord Redesdale expresses the same idea in Clinan v. Cooke, 1 Sch. & Lef. 39, “ The statute does not say that a written agreement shall bind, but that an unwritten agreement shall n-ot bind.” When parol evidence is offered in resistance of a suit for specific performance, it does not contravene the statute; and though it may contravene the rule of law which forbids the introduction of parol evidence to vary a written agreement, it may sometimes be admissible on account of the peculiar nature of the suit. But when it is offered in support of such a suit, it generally contravenes the statute, and is rarely admissible. For the doctrine on this subject I *336 need only refer to the case of Woollam v. Hearn, and the notes thereto appended in Hare & Wallace’s edition of White & Tudor’s Leading Cases in Equity, published in the Law Library, vol. 71, p. 540, 596. There are some exceptions to the general rule excluding parol evidence in support of a suit for specific performance, but it is unnecessary to enumerate them, as they do not embrace this case. The cases of Ross v. Norvell, 1 Wash. 14, and the Bank of the United States v. Carrington, 7 Leigh 566, cited by, the counsel for the appellee, fall within the exceptions; the former being the case of an absolute deed intended to operate as a mortgage, and the latter a case of resulting trust. The case of Ambler & wife v. Norton, 4 Hen. & Munf. 23, also cited by the counsel, depended on the construction of the word “ averment,”'in our statute concerning dower, and does not affect this case. This being a suit for specific performance, falling under the general rule, and not within any of the exceptions to it, parol evidence is therefore inadmissible to prove the agreement, or any part of it.
But suppose the evidence were admissible ? does it prove that there was any such understanding between the parties ? Jarrett, in his answer, positively denies that there was ? and on the contrary avers that when the purchase was made he distinctly informed Johnson that he would have a moiety of the land. The evidence does not overthrow, nor contradict, but rather tends to sustain, the answer. Ho witness testifies to any such understanding. The evidence relied on to prove it consists entirely of mere repetition of oral statements £ which kind of evidence, as has been well said, “is subject to much imperfection and mistake ; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens also that the witness,, by unintentionally altering *337 a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say.” Greenl. on Evi. § 200. remarks of Judge Fleming on the evidence in the case of Henderson v. Hudson, before cited, are strongly applicable to this case; and he concludes them by saying, “ Such evidence as this (were the statute of frauds and perjuries out of the way) is in my mind too slight and feeble to deprive any one of his freehold and inheritance, or any part thereof.” Three witnesses were introduced and relied on by Johnson to, prove the alleged understanding, viz: Hinchman, Hines and Humphreys, not one of whom was present at the time of the joint purchase, and all of whom testify only to admissions said to have been made by Jarrett some timé thereafter. On the other hand, three of the witnesses introduced by Jarrett, to wit, Ellis, Burdett, and Taylor the agent of McDowell, were present when the joint purchase was made, and heard nothing of any such understanding. Without reviewing the testimony of the different witnesses, suffice it to say, that on the most favorable view of the evidence which can be taken for Johnson, it shows that no agreement was ever made in regard to the division of the land between him and Jarrett, except the agreement of the 26th of September 1849, which expired by its terms as aforesaid; that they made the joint purchase without coming to any understanding about the division; Johnson insisting that Jarrett should have no more of the land' than that agreement would have given him, and Jarrett insisting that he would have more, or a moiety of the land; and that their subsequent acts and declarations have been entirely consistent with this view of the manner in which they made the purchase. In this state of the case, whatever may have been the expectation of the parties, they must stand upon their legal rights under the *338 joint purchase, and each is entitled to an undivided moiety of the land.
Thirdly and lastly. It is contended that Johnson entered into the joint contract with the expectation that the land would be divided in the manner indicated by the agreement of the 26th of September 1849; and that Jarrett knew that fact, and did not inform Johnson of his intention to claim any more of the land than that agreement would have given him; which was a fraud on the part of Jarrett, who can take no advantage of it, but must make good the expectation of Johnson. The doctrine referred to in Roberts on Frauds 130, and Roberts on Conveyances 529, is relied on to support this position. But it is unnecessary to investigate this doctrine, or to enquire whether, if the facts were as stated in the proposition, Johnson would be entitled to the relief which he claims ? Fraud is positively denied by the answer, and is wholly unsustained by the evidence. The only testimony tending in any way to prove it is that of Hinchman relating to some admissions said to have been made 'by Jarrett. some time after the joint purchase; and this would be altogether too vague and indefinite to establish so grave a charge, even if it were undenied by the answer. The charge is improbable in itself, and inconsistent with the other testimony in the cause, as I have already sufficiently shown.
The views I have taken of this case render it unnecessary to express any opinion on the questions referred to in the argument, as to the propriety of allowing the amended bill to be filed, and of making the order of the 22d of October 1851, and of the proceedings under that order. Giving the appellee the full benefit of all these proceedings, my conclusion is that the decree is erroneous and ought to be reversed with costs; and the cause remanded, in order that there may be an equal division of the land between the parties, and *339 that the payments respectively made by them of the purchase money, if unequal, and their receipt of the rents and profits, may be equalized. I had some doubt whether, as the bill only seeks the specific performance of an alleged agreement, and has not been sustained in that respect, it ought not to be dismissed with costs, without prejudice to another bill for the equal division of the land. That course was pursued by Sir William Grant in a somewhat similar case. Woollam v. Hearn, 1 Ves. jr. 211. But-as the object of the parties is to have the land divided according to their rights, which can as well be done in this suit as another, it will be for the benefit of both of them to remand the cause for further proceedings, as before indicated. But at all events the costs occasioned by the assertion of the claim of the appellee to an unequal division of the land should be paid by him.
Lee and Samuels, Js. concurred in the opinion of Moncube, J.
Degree reversed.